JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>CLAIRE LEVINE,<br><br>Debtor. | District Ct. Case No.: CV 17-00576-AB<br><br>Bankr. Case no.: 12-22639-ER<br><br>Chapter: 7<br><br>Related Case No.: CV17-01069-AB |
| PACIFIC WESTERN BANK<br><br>Appellant<br><br>v.<br><br>HOWARD M. EHRENBERG,<br><br>Appellee | **ORDER AFFIRMING BANKRUPTCY COURT'S ORDERS DENYING IN PART RELIEF FROM AUTOMATIC STAY** |

Appellant Pacific Western Bank ("Bank") appeals the bankruptcy court's tentative and final orders denying in part Bank's Motion for Relief from Automatic Stay. Bk. Dkt. Nos. 360, 361, 429. Appellee Howard M. Ehrenberg, Chapter 7 Trustee ("Trustee") for debtor Claire Levine's bankruptcy estate, filed a responsive brief, and Bank filed a reply brief. Claire Levine ("Levine") and Gerald Goldstein ("Goldstein") together filed a responsive brief, and Bank filed another reply brief. The Court therefore has considered the following memoranda: Dkt. Nos. 22, 39, 44,

46, and 54. For the following reasons, the Court **AFFIRMS** the bankruptcy court's orders.

**I.     BACKGROUND**

Goldstein and Levine were in a long-term romantic relationship, but never married. During their relationship, Goldstein and Levine purchased multiple properties together, including:

- A property at 1027 Napoli Drive, Pacific Palisades, California 90272 (the "Napoli Property"), which Goldstein and Levine purchased as trustees of the Amadeus Trust;

- A property at 3800 Wailea Aluani, Apartment B101, Maui, Hawaii 96753 (the "B101 Apartment"), which Goldstein and Levine purchased as Tenants by the Entirety as "husband and wife";

- A property at 3800 Wailea Aluani, Apartment E201, Maui, Hawaii 96753 (the "E201 Apartment");

- A property at 11847 Gorham Avenue, Number 303, Los Angeles California 90049 (the "Brentwood Condo");

- A property at 15 East 69th Street, Number 4d, New York, NY 10027 (the "New York Apartment"), which Goldstein and Levine purchased as trustees of the Amadeus Trust; and

- A property at 888 Napoli Drive, Pacific Palisades, California 90272, which Goldstein and Levine purchased as trustees of the Amadeus Trust.

AA Vol. 1, pp. 145, 147-50, 152, 160-63, 165-68, 170-72; AA Vol. 2, p. 573 (¶ 1). According to Levine, the Amadeus Trust was a revocable living trust in which Levine and Goldstein were settlors, trustees, and beneficiaries. AA Vol. 1, p. 278 (¶ 53).

In 2008, the romantic relationship between Goldstein and Levine ended, and Levine filed a palimony lawsuit against Goldstein. Levine alleged that she purchased nine real estate properties, including those listed above, with her separate property. AA Vol. 1, pp. 277-281. She claimed that she had revoked the Amadeus Trust in 2008 and that the real properties she purchased should revert back to her. AA Vol. 1,

pp. 277-280.

In April 2012, Levine filed for Chapter 11 bankruptcy. Bk. Dkt. No. 1. The bankruptcy case was later converted to a Chapter 7 bankruptcy, and Trustee was appointed to administer Levine's bankruptcy estate. Bk. Dkt. Nos. 78, 81. Goldstein filed a creditor's claim against Levine's bankruptcy estate, claiming $5.5 million for expenses Amadeus Trust paid for real properties. AA Vol. 1, pp. 305-08.

In September 2014, Goldstein, Trustee, and Levine entered into a settlement agreement (the "Settlement Agreement"). AA Vol. 2, pp. 572-85. The Settlement Agreement resolved the palimony lawsuit between Levine and Goldstein, as well as Goldstein's creditor's claim against the bankruptcy estate. AA Vol. 2, p. 572. The agreement was contingent on the Short Sale or Early Sale of the B101 Apartment. AA Vol. 2, p. 573 (¶ 2.a). Once the B101 Apartment was sold pursuant to the Settlement Agreement's terms, Levine would take sole title to the Napoli Property and the Brentwood Condo, while Goldstein would take sole title to the E201 Apartment. AA Vol. 2, pp. 574-75 (¶ 3.a). The bankruptcy court approved the Settlement Agreement on September 24, 2015. Bk. Dkt. No. 326.

The parties were unable to sell the B101 Apartment pursuant to the Settlement Agreement's terms. For that reason, they amended the Settlement Agreement in September 2016. AA Vol. 2, pp. 561-70. The amendment provided that the Settlement Agreement would be entirely contingent on the Short Sale of the B101 Apartment to HAR-Bronson Diversified LLC ("Bronson"). AA Vol. 2, p. 561 (¶ 2.a). It also instructed Bronson to resell the B101 Apartment following the Short Sale. AA Vol. 2, p. 562 (¶ 2.e). Bronson would receive $5.3 million of the proceeds from the resale, Levine would receive $1.1 million, and Trustee would receive $300,000. AA Vol. 2, p. 563 (¶ 2.g). If money from the resale was left over, Nemecek & Cole, a law firm that represented Goldstein, could receive $150,000 as partial satisfaction of fees and costs Goldstein owed the firm. AA Vol. 2, p. 563 (¶ 2.g.8). The bankruptcy court approved the amendment to the Settlement Agreement, over Bank's objection, on

January 19, 2017. AA Vol. 3, pp. 991-993.

In separate proceedings, Bank obtained two state court judgments against Goldstein on July 8, 2016. First, the state court entered a $1,044,277.73 judgment against Goldstein and his company Far Out Productions, plus interest. AA. Vol. 1, pp. 249-252. Second, it entered a $2,870,012.65 judgment against Goldstein and his company Audio Visual Entertainment, Inc., plus interest. AA Vol. 1, pp. 256-257.

In an effort to enforce the judgments against Goldstein, Bank filed a motion for relief from the automatic stay. AA Vol. 1, pp. 190-236. It sought to record abstracts of judgment against Goldstein's separate interest in properties he co-owned with Levine. AA Vol. 1, pp. 199-200. It also sought to record notices of judgment liens against Goldstein's personal property. AA Vol. 1, pp. 200-201.

On October 3, 2016, the bankruptcy court issued a tentative ruling that granted Bank relief from the automatic stay with respect to Goldstein's personal property, but denied Bank relief from the automatic stay with respect to Levine's real properties. AA Vol. 2, pp. 504-12. It explained that "[a]llowing [Bank] to record abstract judgments against Goldstein's interest in [real properties] . . . may cloud title and hamper the administration of [Levine's] bankruptcy estate." AA Vol. 2, p. 510. The bankruptcy court conditioned its ruling, however, on a signed settlement agreement being filed within 30 days. AA Vol. 2, pp. 514-15. After the bankruptcy court granted an extension to file a settlement agreement, Trustee filed the amended Settlement Agreement for approval on December 5, 2016. AA Vol. 2, pp. 538-630. Then, on January 19, 2017, the bankruptcy court entered a final order accepting its tentative ruling. AA Vol. 3, pp. 995-96. Bank filed notices of appeal regarding both the tentative ruling and the final order. AA Vol. 3, pp. 958-62, 998-1004.

Bank has represented that Goldstein and Levine lost the E201 Apartment in a foreclosure sale and that the New York Apartment was sold in 2013. Dkt. No. 22, at p. 16, n.3; AA Vol. 1, p. 86. The bankruptcy court previously terminated the automatic stay of the property at 888 Napoli Drive. Bk. Dkt. No. 40. Thus, Bank,

through its appeal, only seeks leave to record abstracts of judgment against the B101 Apartment, the Napoli Property, and the Brentwood Condo (together, the "Real Properties").

## II. ISSUE PRESENTED

The issue presented on appeal is whether an automatic bankruptcy stay protects a non-debtor's separate interest in property he co-owns with a bankruptcy debtor where the non-debtor's separate interest would be extinguished by the effectuation of a settlement agreement.

## III. STANDARD OF REVIEW

Courts review questions of law *de novo*. *See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993). The scope of an automatic stay is a question of law subject to *de novo* review. *See In re Chugach Forest Prods., Inc.*, 23 F.3d 241, 244 (9th Cir. 1994). However, a bankruptcy court can, in its discretion, grant relief from an automatic stay. 11 U.S.C. § 362(d). Courts apply an abuse of discretion standard of review to such discretionary decisions. *Benedor Corp. v. Conejo Enters., Inc.*, 96 F.3d 346, 351 (9th Cir. 1996). The proper standard of review therefore depends on whether an appellant challenges a bankruptcy court's assessment of the scope of an automatic stay or its decision to grant (or deny) relief from an otherwise applicable automatic stay.

Here, Bank contends that the bankruptcy court erred because it overextended the scope of the automatic stay. Instead of arguing that the bankruptcy court improperly failed to grant relief from an applicable automatic stay, Bank claims the automatic stay cannot, as a matter of law, apply to Goldstein's interest in the Real Properties. Because Bank challenges the bankruptcy court's legal determination about the scope of the automatic stay, a *de novo* standard of review applies.

## IV. DISCUSSION

As soon as a bankruptcy case is filed, an automatic stay goes into effect that prevents creditors from taking actions against the property of the bankruptcy estate.

5.

11 U.S.C. § 362(a). The stay prohibits, among other things, "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title" and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id.* § 362(a)(2-3). The automatic stay protects both the debtor and creditors. It gives the debtor breathing space while she attempts to regain her financial footing. *See Hillis Motors*, 997 F.2d at 585; *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992). At the same time, it protects creditors from each other by preventing a rush to the courthouse that would favor whichever creditor acted first to the detriment of all other creditors. *See In re Bialac*, 712 F.2d 426, 431 (9th Cir. 1983) (citing H.R. Rep. No. 95–595, 95th Cong., 2d Sess. at 340 (1977)). In so doing, the automatic stay helps ensure the orderly distribution of estate property in a way that will maximize the benefit to creditors. *Id.*

Levine filed for bankruptcy on April 10, 2012. Bk. Dkt. No. 1. The bankruptcy filing automatically protected her from attempts to enforce judgments against her and her bankruptcy estate. Here, Bank is attempting to enforce the judgments it obtained against Goldstein, not Levine. Bank's enforcement efforts therefore are not targeted at the bankruptcy debtor in this case. However, by seeking to record abstracts of judgment against the Real Properties, Bank attempts to take enforcement actions against property in which Levine has an interest. The question before the Court is whether those enforcement actions are directed at property of the estate that is protected by the automatic stay.

**A. Ownership of the Real Properties**

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case" "wherever located and by whomever held." 11 U.S.C. § 541. Courts assess whether property falls into a bankruptcy estate with the help of state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979).

Here, Bank claims Goldstein and Levine own the Real Properties as tenants in

common. Dkt. No. 22, at pp. 19-20. This, Bank argues, means that Goldstein possesses a separate interest in the Real Properties. *Id*., at p. 22. But Levine contends that the Real Properties are her separate property that she purchased with her own assets. Dkt. No. 46, at pp. 5-6. Thus, Levine claims, Goldstein does not have any ownership interest in the Real Properties. *Id*.

Goldstein and Levine litigated their respective ownership of the Real Properties in state court. The Settlement Agreement resolved that litigation, and it grants Levine the entirety of the remaining Real Properties upon the Short Sale of the B101 Apartment. As Bank points out, the Settlement Agreement has not yet taken effect because the B101 Apartment has not been sold. But, at the very least, Levine owns a contingent interest in the entirety of the Real Properties that will vest upon the Short Sale of the B101 Apartment. As explained below, that contingent interest is sufficient to include the entirety of the Real Properties within the scope of the automatic stay. The Court therefore need not decide the exact extent of Goldstein's and Levine's current interests in the Real Properties to resolve Bank's appeal.

### B. <u>Application of the Automatic Stay</u>

An automatic stay generally does not extend to the property of non-debtors. *Chugach Forest Prods.*, 23 F.3d at 246. However, "Congress clearly intended the automatic stay to be quite broad." *In re Stringer*, 847 F.2d 549, 552 (9th Cir. 1988). It attaches to all of the debtor's property interests, even if the interests are conditional, future, or contingent. *In re Neuton*, 922 F.2d 1379, 1382 (9th Cir. 1990); *In re Anders*, 151 B.R. 543, 545 (Bankr. D. Nev. 1993). It protects property the debtor jointly owns with a non-debtor where enforcement actions against the non-debtor's interest might deprive the bankruptcy estate of a future property interest. *See Bialac*, 712 F.2d at 432.

In *Bialac*, a debtor owned a one-sixth interest in a surplus cash note, the rest of which was owned by his family members. *Id*. at 428. An investment company obtained a state court judgment against the family members and gave notice that it

7.

intended to foreclose on the surplus cash note. *Id.* Before the foreclosure sale, the debtor filed for bankruptcy. *Id.* The investment company proceeded with the sale, but only sold five-sixths of the surplus note, not the debtor's one-sixth interest. *Id.* The debtor challenged the sale, arguing that it violated the automatic stay. *Id.* The court agreed with the debtor, for two reasons. *Id*. at 432. First, the automatic stay should be interpreted to achieve "the orderly disposition of all property in which the debtor has some interest." *Id.* Restricting the automatic stay would frustrate the purposes of the Bankruptcy Act. *Id.* Second, the debtor had a redemption right to the entirety of the surplus cash note under applicable foreclosure laws, and that right had been cut off by the sale. *Id.* Even though the redemption right was a contingent one, it was still property of the bankruptcy estate protected by the automatic stay. *Id*. at 431.

Like the debtor in *Bialac*, Levine owns a contingent interest in the entirety of the Real Properties. If the B101 Apartment is sold in a Short Sale pursuant to the Settlement Agreement, then Levine, and therefore her bankruptcy estate, will take the Napoli Property and Brentwood Condo as her sole, separate property. At that point, the B101 Apartment will have been sold, with Goldstein receiving none of the direct proceeds from the Short Sale.[1] The Settlement Agreement could, therefore, operate to grant Levine and her bankruptcy estate the entirety of the Real Properties. Because Levine has a contingent interest in the entirety of the Real Properties, including whatever separate interest Goldstein currently has in them, Bank cannot take enforcement actions against the Real Properties without also affecting the bankruptcy estate's property rights. Accordingly, the Real Properties fall entirely within the scope of the automatic stay.

---

[1] Depending on the resale price, Goldstein's attorneys might receive a portion of the proceeds from the resale of the B101 Apartment, which would be credited against the fees Goldstein owes. AA Vol. 2, p. 563 (¶ 2.g.8). However, Goldstein could also receive no monetary benefit from the resale. The resale provision therefore does not alter the Court's conclusion that Levine has a contingent interest in the entirety of the Real Properties.

8.

1  Bank argues that it only seeks to record abstracts of judgment against
2  Goldstein's separate interest in the Real Properties, and, because Goldstein is not the
3  bankruptcy debtor, the bankruptcy estate cannot extend to his separate interest. In
4  asserting this argument, Bank primarily relies on *In re Miller*, 853 F.3d 508 (9th Cir.
5  2017). There, a bankruptcy debtor and his wife owned a cooperative apartment in San
6  Francisco, California. *Id*. at 512. A bank, which had obtained a judgment against the
7  debtor, filed an adversary proceeding seeking a declaration that it held an enforceable
8  judgment lien on the co-op, which would give it priority over the proceeds of a
9  foreclosure sale. *Id*. at 513. The court determined that, under California law, the
10 debtor and his wife held the co-op as tenants in common. *Id*. at 519. Because the
11 debtor was a tenant in common, he had a separate interest in the co-op. *Id*. at 512.
12 That separate interest was subject to enforcement of the judgment lien, which allowed
13 the bank to participate in the distribution of the debtor's bankruptcy estate. *Id*. at 519.

14 Bank makes much more of *Miller* than the case merits. All *Miller* held was
15 that, as a tenant in common, the debtor had a separate interest in the co-op. Once the
16 court determined that the debtor had a separate interest in the co-op, the bank, as his
17 creditor, could benefit from the proceeds of the co-op's sale just as any other creditor
18 would. Stated simply, the court held that the debtor's separate interest in the co-op
19 was part of his own bankruptcy estate.

20 Here, Bank does not make the uncontroversial argument that, like in *Miller*,
21 Levine's separate interest in the Real Properties is included in her own bankruptcy
22 estate. Bank argues the inverse – that Goldstein's interest in the Real Properties is
23 excluded from the bankruptcy estate in a way that allows Bank to take enforcement
24 actions against it. While the court's decision in *Miller* added property to the
25 bankruptcy estate, Bank would have the Court remove property from Levine's
26 bankruptcy estate despite the estate's contingent interest in that property. *Miller* does
27 not support such a result.

28 Bank's position also neglects the practical effect of excluding Goldstein's

9.

interest in the Real Properties from the scope of the automatic stay. Courts do not determine the scope of an automatic stay in a vacuum. Instead, they examine the extent to which a party's exercise of control over a property will impact the bankruptcy estate. *See Bialac*, 712 F.2d at 432 (explaining that property "should be protected by the stay if the purposes of the [Bankruptcy] Act, the orderly disposition of all property in which the debtor has some interest, are to be achieved"); *In re Bibo, Inc.*, 200 B.R. 348, 351 (B.A.P. 9th Cir. 1996), *opinion vacated, appeal dismissed due to mootness*, 139 F.3d 659 (9th Cir. 1998) (finding that an automatic stay applied where a foreclosure would have "a sufficient impact on Debtor's interest"); *In re Allentown Ambassadors, Inc.*, 361 B.R. 422, 440 (Bankr. E.D. Pa. 2007) (examining cases and creating a three part test to determine whether an act violates an automatic stay, which includes an examination of "the degree of impact on the bankruptcy estate").

Bank's proposed enforcement actions would inhibit the orderly distribution of Levine's bankruptcy estate. As the bankruptcy court explained, "[a]llowing [Bank] to record abstract judgments against Goldstein's interest in [the Real Properties] . . . may cloud title and hamper the administration of [Levine's] bankruptcy estate." AA Vol. 2, p. 510. By taking enforcement actions against the B101 Apartment, Bank could inhibit the property's sale. And, because the Settlement Agreement is contingent on the B101 Apartment's sale, Bank's proposed enforcement actions threaten to dismantle an agreement that resolves multiple disputes. Indeed, Bank's papers suggest that the very purpose of this appeal is to prevent the Settlement Agreement from taking effect.[2] Such a result should be avoided to satisfy the purpose of the

---

[2] Bank explained in its papers that it wanted to record abstracts of judgment against the Real Properties so that it would have standing to object to the Settlement Agreement on the grounds that Goldstein is not receiving a sufficient return in exchange for giving up his potential interest in the Real Properties. Dkt. No. 22, at p. 29, n.5. In other words, Bank's motivation in filing this appeal is to disrupt the Settlement Agreement, which has been approved by the bankruptcy court.

Bankruptcy Act – the orderly disposition of the bankruptcy estate's property. The practical implications of Bank's requested relief therefore support the Court's conclusion that the automatic stay extends to Goldstein's interest in the Real Properties.

## V. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's orders denying in part Bank's Motion for Relief from Automatic Stay.

**IT IS SO ORDERED.**

Dated: January 8, 2018

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

CC: Bankruptcy Court and BAP